IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| THOMAS RUNYON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. NO. 2:20-cv-00245 |
| | § | |
| ARKOMA ENERGY SERVICES, LLC | § | |
| | § | JURY DEMANDED |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, THOMAS RUNYON, files this Complaint and Jury Demand against Defendant, ARKOMA ENERGY SERVICES, LLC, alleging willful violation of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*, as amended by the ADA Amendments Act of 2008 ("ADA") and the Texas Commission on Human Rights Act. For causes of action, Plaintiff would show the Court as follows:

## I.
## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff THOMAS RUNYON is a resident of Gregg County, Texas.

2. Defendant ARKOMA ENERGY SERVICES, LLC is a Texas limited liability company which may be served with Citation through its Registered Agent, Christopher Black, 20405 State Hwy 249, Suite 150, Houston, TX 77070.

3. This Court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §1331 and 42 U.S.C. §12117(a). The Court has supplemental jurisdiction over Plaintiff's claims arising under Texas statutory law under 28 U.S.C. §1367.

4. Venue is proper in this district and division under 42 U.S.C. §12117(a) (incorporating 42 U.S.C. §2000e-5(f)(3)) and 28 U.S.C. §1391(b)(1) because the incidents that gave rise to the claims in this case occurred in Gregg County, Texas.

## II.

## FACTUAL BACKGROUND

5. Plaintiff was employed by Arkoma Energy Services, LLC as a truck driver from October 15, 2015 until he was terminated on November 12, 2019.

6. In February of 2018, Plaintiff had a triple bypass surgery done on his heart. He was told by Robert Bivens, the yard manager for Arkoma, that he would still have a job when he get released to go back to work.

7. Plaintiff was released to return to work by his cardiologist around March 23, 2018. Arkoma's corporate office would not allow Plaintiff to return to work because there was a question raised as to whether or not he was able to perform the essential duties of his position.

8. Plaintiff returned to work on April 2, 2018 to cover the office while the yard manager took a vacation. The next week Plaintiff worked in the office and renewed his DOT physical, then went back to driving a truck.

9. At the end of April, 2018, Plaintiff returned to the hospital to have his gallbladder removed and was out for a week. At the end of May, Plaintiff was offered the job of yard manager which he turned down because of less pay and more stress.

10. Arkoma brought Ray Heberlig in to be the yard manager at that time. Plaintiff spent two weeks training Ray on paperwork and procedures. Plaintiff was told by Ray to watch his back because the company wanted to get rid of him.

11. Richard Wells was appointed to be the district manager and Ray told Plaintiff that he was looking for a reason to fire Plaintiff. On September 14, 2019, Plaintiff went into the hospital and was released to return to work on September 16, 2019. On September 18, 2019 Plaintiff went to the office and asked why he was not being scheduled for work. Ray told Plaintiff that corporate was trying to decide what to do with him.

12. On September 20, 2019, Plaintiff was informed that he needed to have another DOT physical in order to go back to work. One month prior to this Plaintiff had a DOT physical done in which he was approved to drive a truck.

13. On September 21, 2019 Plaintiff resumed working and worked 11.25 hours. The next day he worked 5.5 hours. On November 8th Plaintiff had an accident by backing into a pole and bent the bottom step on the passenger side of the truck. Plaintiff called Sam Knighton (safety manager) and reported the incident. Knighton concluded that the company could repair the damages in-house. When Plaintiff was in Pleasant Hill, Louisiana delivering the trailer, he was told to park the truck and wait for Knighton to pick him up. Knighton drove Plaintiff to Longview for a drug and alcohol test. Plaintiff was told to go home and wait for a call from Knighton.

14. On Tuesday November 12th Plaintiff was told to go to the office at 4 PM. When Plaintiff arrived Sam Knighton and JR Vega were there. JR Vega called the District Manager Richard Wells, and he terminated Plaintiff over the phone. Wells said that it was a corporate decision and the company was going in a different direction and that if Plaintiff wanted to know why to call corporate. Plaintiff did reach out to the Arkoma corporate office and was never given a response regarding the reason for his termination.

15. Plaintiff alleges that his termination was motivated in whole, or in part, by his actual or perceived disability.

### III.
### CAUSES OF ACTION
### COUNT ONE:

**Discrimination on the Basis of Disability
in violation of the ADA and TCHRA**

16. Defendant violated the Americans with Disabilities Act and the Texas Commission on Human Rights Act by discharging Plaintiff. 42 U.S.C. § 12101 *et seq.;* Texas Labor Code

§21.001 *et seq.*

17. Under 42 U.S.C. §12112 and the Texas Labor Code, §21.001 *et seq.*, it is unlawful for an employer to discriminate against any individual with respect to his employment because of that individual's disability or because the employer regards the individual as a person with a disability.

18. Defendant is an employer under the ADA and the TCHRA.

19. Plaintiff was qualified for and could perform the essential functions of his job at the time of his termination. Plaintiff is a qualified individual with a disability, is a qualified individual with a record of a disability and was regarded by the Defendant as a person with a disability.

20. Plaintiff was meeting his employer's expectations.

21. Plaintiff was terminated as a direct result of his actual or perceived disability, his record of having a disability, and/or because Defendant regarded Plaintiff as a person with a disability.

22. Defendant violated both the ADA and TCHRA by intentionally discriminating against Plaintiff because of his actual or perceived disability by terminating Plaintiff's employment. Plaintiff's disability and/or being regarded as disabled was a determining or motivating factor in Defendant's decision to terminate Plaintiff's employment. Plaintiff's disability and/or Defendant's perception of Plaintiff as a person with a disability moved Defendant toward its decision or was a factor that played a part in Defendant's employment decisions as to Plaintiff.

## IV.
## DAMAGES

23. As a result of Defendant's unlawful conduct, Plaintiff has suffered economic and

actual damages, including past and future lost income, back wages, interest on back pay and front pay, future wages or front pay, lost earnings in the past and future, lost benefits under the contract or employment relationship, employment benefits in the past, and employment benefits in the future. Plaintiff has also incurred other actual damages as a result of Defendant's unlawful conduct, including but not limited to past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

## V.
## COMPENSATORY DAMAGES

24. Defendant intentionally engaged in an unlawful employment practice by discriminating against Plaintiff because of his disability, his record of having a disability, and/or because Defendant regarded Plaintiff as being disabled. Plaintiff additionally brings suit for compensatory damages, including emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, lost earning capacity in the past and future, and other pecuniary and non-pecuniary losses.

## VI.
## PUNITIVE DAMAGES

25. The conduct committed by Defendant against Plaintiff is the type of conduct demonstrating malice or reckless indifference to the rights of the Plaintiff. Therefore, Plaintiff additionally brings suit for punitive damages.

## VII.
## ATTORNEYS' FEES AND EXPERT FEES

26. A prevailing party may recover reasonable attorneys' and experts' fees. SEE TEX. LAB. CODE §21.259; 42 U.S.C. §2000e-5(k). Plaintiff seeks all reasonable and necessary attorneys' fees in this case, including preparation and trial of this lawsuit, post-trial, pre-appeal legal services,

and any appeals.  Plaintiff additionally brings suit for expert fees.

## VIII.
## JURY DEMAND

27. Plaintiff demands a trial by jury of all the issues and facts in this case and tenders herewith the requisite jury fee.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

1. The Court assume jurisdiction of this cause;

2. The Court award Plaintiff damages as specified above;

3. The Court award Plaintiff reinstatement or, in the alternative, front pay;

4. The Court award Plaintiff's reasonable attorneys' and expert fees and costs;

5. The Court award Plaintiff pre- and post-judgment interest at the highest rates allowed.

6. The Court award Plaintiff reinstatement with a requirement of reasonable accommodation, or, in the alternative, that the Court award front pay to the Plaintiff.

Plaintiff further prays for any such other relief as the Court may find proper, whether at law or in equity.

Dated: July 24, 2020

Respectfully submitted,

**HOMMEL LAW FIRM**

By: /s/ *William S. Hommel, Jr.*
**William S. Hommel, Jr.**
State Bar No. 09934250
5620 Old Bullard Road, Suite 115
Tyler, Texas 75703
Telephone: 903-596-7100
Facsimile: 469-533-1618
bhommel@hommelfirm.com

**ATTORNEY FOR PLAINTIFF**